IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

BRIAN L. KLOSTER,

  Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

  Defendant.

No. C13-1002

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND*  . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW*  . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.    *Kloster's Education and Employment Background*  . . . . . . . . . . . . 5
      B.    *Administrative Hearing Testimony*  . . . . . . . . . . . . . . . . . . 6
            *1.    Kloster's Testimony* . . . . . . . . . . . . . . . . . . . . . 6
            *2.    Medical Expert's Testimony*  . . . . . . . . . . . . . . . . . 7
            *3.    Vocational Expert Testimony* . . . . . . . . . . . . . . . . . 7
      C.    *Kloster's Medical Evidence*  . . . . . . . . . . . . . . . . . . . . . 8

V.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . 11
      B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . 14

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

   *1.*   *Fully and Fairly Developed Record* . . . . . . . . . . . . . . . . . 14
   *2.*   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . . 20
  *C.*   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*VII.*   *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## *I. INTRODUCTION*

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Brian L. Kloster on January 23, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Kloster asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Kloster requests the Court to remand this matter for further proceedings.

## *II. PROCEDURAL BACKGROUND*

On July 20, 2009, Kloster applied for disability insurance benefits. In his application, Kloster alleged an inability to work since June 23, 2009 due to left leg amputation, emphysema, asthma, and sleep apnea. Kloster's application was denied on September 24, 2009. On February 5, 2010, his application was denied on reconsideration. On February 17, 2010, Kloster requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 1, 2011, Kloster appeared with his attorney before ALJ Karen McCoy for an administrative hearing.[2] Kloster, vocational

---

[2] The hearing was held in San Antonio, Texas. Kloster was represented by attorney Anna Hawes in Texas. At some point in 2011, Kloster moved to eastern Iowa. Thus, his appeal is brought in this Court. On appeal, Kloster is represented by attorney
(continued...)

expert Judith A. Harper, and medical expert Dr. Arthur H. Briggs, M.D., testified at the hearing. In a decision dated August 22, 2011, the ALJ determined that from June 23, 2009 to December 22, 2010, Kloster was disabled. The ALJ further determined that beginning on December 23, 2010, Kloster's disability ended, and he was no longer entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Kloster appealed the ALJ's decision. On November 21, 2012, the Appeals Council denied Kloster's request for review. Consequently, the ALJ's August 22, 2011 decision was adopted as the Commissioner's final decision.

On January 23, 2013, Kloster filed this action for judicial review. The Commissioner filed an Answer on April 1, 2013. On May 3, 2013, Kloster filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that as of December 23, 2010, he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On June 25, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 5, 2013, Kloster filed a reply brief. On February 25, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the

---

[2](...continued)
Thomas A. Krause.

decision of the Commissioner . . . with or without remanding the cause for a rehearing."
42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported
by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the Commissioner's decision if supported by substantial
evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir.
2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance
but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"
*Id*. (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,
674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable
person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers
"all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence."
*Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not
only considers the evidence which supports the ALJ's decision, but also the evidence that
detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012);
*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision
"extends beyond examining the record to find substantial evidence in support of the ALJ's
decision; [the court must also] consider evidence in the record that fairly detracts from that
decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth
Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the
> evidence and it allows for the possibility of drawing two
> inconsistent conclusions, thus it embodies a zone of choice
> within which the [Commissioner] may decide to grant or deny
> benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland
v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th

Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Kloster's Education and Employment Background

Kloster was born in 1964. He completed the tenth grade in school. He has neither obtained a GED, nor had any additional training. Kloster testified that he is able to read, write, and speak the English language.

The record contains a detailed earnings report for Kloster. The report covers the time period from 1979 to 2009. From 1981 to 1993, Kloster earned between $510.19 (1990) and $5,217.02 (1993). He had no earnings in 1994 and 1995. From 1996 to 2009, he earned between $2,110.63 (1996) and $48,250.92 (2006). He has no earnings since 2010.

## B. Administrative Hearing Testimony

### 1. Kloster's Testimony

Kloster had his left leg amputated below the knee due to complications from a motorcycle accident. At the administrative hearing, Kloster's attorney inquired as to Kloster's difficulties with his amputated leg and prosthesis. Kloster testified that he used crutches on a daily basis because wearing his prosthesis for prolonged periods causes him pain. Kloster also testified that standing or sitting for long periods causes his leg to go numb and/or cramp up. Kloster's attorney also asked Kloster about his functional abilities:

> Q: Do you have problems moving around your home, such as going around corners?
>
> A: Yeah, the area -- yeah. It's tighter areas [that cause problems.]
>
> Q: Do you have problems reaching down to pick things up?
>
> A: Yes.
>
> Q: You said that you have problems sitting and standing. How long can you sit before you have to move around?
>
> A: Well, after 10 or 15 minutes, I start moving around[.] . . .
>
> Q: Let's see, you mentioned having problems standing. How long can you stand before you need to sit down or move around or start leaning?
>
> A: No more than 15 minutes and then it will start affecting my back. And then, some -- most of the times it's my back. But then my fibula bone is when that starts hurting too.
>
> Q: And then you said that you can walk about a block before you have to sit down?
>
> A: Half [a block].

(Administrative Record at 61-62.) Kloster stated that he uses medication, massage, heat, and elevation to keep the pain level down in his amputated leg. Specifically, Kloster testified that he elevates his leg for one-half hour three or four times each day.

## 2. *Medical Expert's Testimony*

At the hearing, the ALJ questioned medical expert, Dr. Arthur H. Briggs, M.D., regarding Kloster. Dr. Briggs provided the ALJ with an overview of Kloster's medical history:

> [Kloster] had a motorcycle accident and had a lower-knee amputation on the left at 6/25/09[.] . . . He's had complications with his prosthesis for quite a while. On 9/16/09, he developed an infection and had to have his prosthesis changed[.] . . . He needed revision with the below-the-knee amputation. He also had a difficulty on 11/16/09. He had prosthesis [his] prosthesis changed[.] . . . So, he's had a long documentation in terms of difficulty with his prosthesis. . . . And then on . . . 5/6/10, he was using two forearm crutches[.] . . . But the most recent documentation would indicate by -- at least 9/20/10, he was doing very well. . . . On . . . 10/6/10, he was walking without a problem[.] . . . And then, on 10/25/10, everything is okay except walking down ramps[.] . . . It sounds like things have gotten worse. And he's got back problems. I don't have any documentation as far as the back is concerned, so, I have no way of evaluating that.

(Administrative Record at 65-66.) Dr. Briggs testified that by September 2010, he believed Kloster was doing well enough from a medical standpoint to perform sedentary work. However, with new evidence not available at the time of the hearing, Dr. Briggs, without seeing this new evidence, opined that Kloster may have "significant problems" and is "probably not going to be able to be working on a consistent basis."[3]

## 3. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Judith A. Harper with a hypothetical for an individual who:

---

[3] Administrative Record at 67.

could occasionally lift 10 pounds occasionally intermittently throughout the day, and could carry five pounds at least occasionally, but could lift it frequently and could stand and walk two hours out of eight -- and this would be intermittently throughout the day, a person who could sit, you know, wouldn't have to be doing the walking all at once -- and could sit at least six out of eight. And, in this case, I would provide him an opportunity to stand up hourly. . . . And he could occasionally, you know, bend, bending forward, so forth, and stoop, but no kneeling. He could occasionally crouch, but he can't crawl and he cannot climb ladders, ropes or scaffolds, not even stepladders. . . . [Also] no concentrated exposure to chemical fumes, to gases or dust.

(Administrative Record at 76-77.) The vocational expert testified that under such limitations, Kloster could perform the following work: (1) lens inserter (2,000 positions in Texas and 100,000 positions in the nation), (2) order clerk (14,000 positions in Texas and 500,000 positions in the nation), and (3) final assembler of eye glasses (6,000 positions in Texas and 400,000 positions in the nation).

### C. Kloster's Medical Evidence

On June 25, 2009, Kloster underwent a left leg, below-the-knee amputation due to a mangled left foot with multiple fractures and dislocations from a motorcycle accident. In early and mid-July, Kloster's stump on the amputated leg became infected. Doctors treated the infection with antibiotics. By July 23, 2009, Kloster's infection was gone. He continued on medication to avoid further infection. On August 7, 2009, his treating doctor, Dr. Edward A. Connolly, M.D., found that Kloster's "open wounds appear to be healing well."[4] On September 16, 2009, Dr. Connolly found that Kloster's wounds continued to heal nicely. Kloster reported that he was "anxious to be fit for his below-

---

[4] Administrative Record at 387.

knee amputation prosthesis."[5] Dr. Connolly gave Kloster a prescription for a prosthesis fitting.

On September 24, 2009, Dr. Charles Kenney, M.D., reviewed Kloster's medical record and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Kloster. Dr. Kenney determined that Kloster could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. With regard to Kloster's exertional limitations, Dr. Kenney opined that:

> As of 8/7/09[, Kloster] is healing well. . . . [Kloster's] condition will improve over time and will not continue at current severity level for 12 continuous months. [I]t is projected [Kloster] will be able to use prosthesis as of 12 months post amputation.

(Administrative Record at 407.) Dr. Kenney further determined that Kloster could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Dr. Kenney also found that Kloster should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Dr. Kenney found no manipulative, visual, or communicative limitations. Dr. Kenney concluded that:

> [Kloster's] statements of limitations and symptoms are found partially credible. [Kloster] indicates he is limited in ability to ambulate with need of crutches. He cannot stand and walk for long. [M]edical evidence shows [Kloster] with recent amputation of left lower extremity. He is in the healing process. [H]is limitations will not last for 12 continuous months. They are credible limitations for present time, but not for 12 months from now.

---

[5] Administrative Record at 426.

9

(Administrative Record at 413.)

In October 2009, Kloster was fitted for his prosthesis. On November 16, 2009, Kloster met with Dr. Connolly, complaining of pain at the end of his stump. Dr. Connolly noted that Kloster "recently was fit with a prosthesis and has had problems since then."[6] Dr. Connolly further noted that since changing prosthetists, Kloster "has noted an improvement. They are currently working on adjusting his socket."[7] Upon examination, Dr. Connolly found that Kloster's stump was "well healed." Dr. Connolly encouraged Kloster to continue with his current prosthetist to correct his problems with the prosthesis.

In January and February 2010, Kloster met with Dr. Connolly, complaining of stump pain and pain while wearing his prosthesis. Dr. Connolly reviewed several treatment options with Kloster, including revision of his amputation site. On April 29, 2010, Kloster underwent a revision at the amputation site. On May 6, 2010, at a follow-up appointment, Dr. Connolly found that Kloster was "doing well."

In August 2010, Kloster met with Gordon Bosker, a prosthetist, to discuss obtaining a new prosthesis for his left leg. On September 15, 2010, Kloster was fitted for his new prosthesis. Bosker noted that Kloster walked "extremely well" and had no pain with his new prosthesis. On October 6, 2010, Kloster reported pain while using his prosthesis. From October through December 2010, Bosker adjusted Kloster's prosthesis to reduce his pain while using it. In January 2011, Kloster reported improvement, and stated that "he's been playing golf and other outside activities and he has no problem with his residual limb."[8] On March 1, 2011, Kloster returned to Bosker, complaining of severe back pain.

---

[6] Administrative Record at 424.

[7] Id.

[8] Id. at 587.

Bosker checked the prosthesis and found nothing wrong with it. Bosker suggested Kloster meet with his primary care physician regarding his back before moving forward with further adjustment of his prosthesis.

In October 2011, Kloster met with Rachel K. Elbing, a physician's assistant at the University of Iowa Hospitals and Clinics, complaining of extremity pain and possible stump infection. Kloster reported that he was unable to wear his prosthesis due to pain. Upon examination, no signs of infections were found. Elbing opined that the "pain may likely just be some irritation from the prosthetic."[9] Elbing provided medication as treatment.

On December 12, 2011, Kloster met with Dr. M. Glenn Abernathy, complaining of chronic pain and arthritis in his back. Upon examination, Dr. Abernathy diagnosed Kloster with back pain. On December 23, 2011, Kloster returned to Dr. Abernathy, again, complaining of chronic pain and arthritis in his back. Dr. Abernathy again diagnosed Kloster with back pain, and prescribed medication as treatment. In March 2011, Kloster continued to meet with Dr. Abernathy due to back pain and arthritis. Dr. Abernathy continued to treat Kloster with medication.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Kloster was disabled from June 23, 2009 to December 22, 2010. The ALJ further determined that beginning on December 23, 2010, Kloster's disability ended, and concluded that he has not been disabled since that time. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*,

---

[9] Administrative Record at 596.

482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Kloster had not engaged in substantial gainful activity since June 23, 2009. At the second step, the ALJ concluded from the medical evidence that Kloster had the following severe impairments: status post amputation of the left leg and asthma. At the third step, the ALJ found that from June 23, 2009 to December 22, 2010, Kloster was disabled because he met the criteria for section 1.05(B) of 20 C.F.R. Pt. 404, Subpt. P, App. 1. Also at the third step, the ALJ determined that due to medical improvement, Kloster did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, beginning on December 23, 2010. At the fourth step, the ALJ determined that beginning on December 23, 2010, Kloster had the following RFC:

> to lift and/or carry up to 10 lbs occasionally intermittently
> throughout the day, carry up to 5 lbs occasionally and lift up

> to 5 lbs frequently; stand and/or walk 2 hours out of
> 8 intermittently throughout the day, or sit 6 out of 8 with an
> opportunity to stand up hourly; within the walking restrictions,
> can climb entry ramps but no stairs; no climbing ladders,
> ropes, or scaffolds; occasionally bend and stoop; no kneeling;
> occasionally crouch; no crawling; and no concentrated
> exposure to chemical fumes, dust, or gases.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that beginning on December 23, 2010, Kloster was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that beginning on December 23, 2010, and based on his age, education, previous work experience, and RFC, Kloster could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that as of December 23, 2010, Kloster was not disabled.

## B. Objections Raised By Claimant

Kloster argues that the ALJ erred in two respects. First, Kloster argues that the ALJ failed to fully and fairly develop the record. Second, Kloster argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1. Fully and Fairly Developed Record

Kloster argues that the ALJ failed to fully and fairly develop the record in two respects. First, Kloster argues that the ALJ's conclusion that beginning on December 23, 2010, he had medical improvement and was able to work a full-time job on a sustained basis is incorrect and not supported by substantial evidence. Specifically, Kloster argues that the ALJ focused solely on evidence showing he made improvement in January 2011, and ignored evidence that he began having medical difficulties again in February 2011. Second, Kloster argues that the administrative record is incomplete and the ALJ failed to fully and fairly develop the record. Specifically, Kloster argues that:

> The ALJ at hearing emphasized the need for the records and
> castigated [Kloster's attorney] for not having the records.

14

[Kloster's attorney], on at least three occasions, attempted to obtain the records and succeeded in obtaining some of them (Mr. Bosker's records). [Kloster's attorney] requested assistance from the ALJ's office. At hearing, the ALJ offered assistance and noted that h[er] office should be able to obtain the records. [The medical expert] noted the importance of the records and believed the records may prove continuing disability. There is no evidence in the record that the ALJ attempted to obtain any of the missing records. The ALJ left a crucial issue undeveloped in this case.

Kloster's Brief (docket number 10) at 17-18. Kloster concludes that this matter should be remanded for further development of the record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial

proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, Kloster was found to be disabled from June 23, 2009 to December 22, 2010 due to left leg amputation following a motorcycle accident. Beginning on December 23, 2010, the ALJ found that Kloster had medical improvement and was no longer disabled. In support of this conclusion the ALJ relies on one single piece of evidence, a comment from Kloster's prosthetist, in which he stated that Kloster was not having any problems

with his prosthesis and was able to play golf.[10]   The ALJ, however, failed to address medical notes of the prosthetist from February 2011 and March 2011, in which Kloster complained of having difficulty with his prosthesis (February) and complained of severe back pain radiating to his amputated leg (March).[11]   Furthermore, Kloster's prosthetist told Kloster that he needed to contact his primary care physician regarding his back pain before he could do anything further for him.[12]   The record before the Court is devoid of any records from Kloster's primary care physician in 2011.   At the hearing, Kloster's attorney informed the ALJ that she had attempted to get records from Kloster's primary care physician on two occasions without success.  She stated that she would attempt to get them a third time, but may need the ALJ's help in obtaining them.  The ALJ assured Kloster's attorney that she would help her obtain the records.[13]   Apparently, neither Kloster's attorney, nor the ALJ were able to obtain the records from Kloster's primary care physician because those records are missing from the administrative record. Furthermore, there is nothing in the record explaining why those records were not available or obtained.  Additionally, medical records from October 2011 and December 2011 show that Kloster continued to have difficulty with stump pain and chronic back pain.[14]   Moreover, at the hearing, a medical expert, Dr. Briggs, testified that with the

---

[10] *See* Administrative Record at 587.

[11] *Id*. at 589-90.

[12] *Id*. at 590.

[13] *See* Administrative Record at 67-69.

[14] *Id*. at 592-606.  The Court notes that these records are taken from medical treatment that occurred after the ALJ's decision.  These records, however, were presented to the Appeals Council.  In its decision, the Appeals Council stated that it considered the new evidence provided by Kloster, and found that it did not "provide a basis for changing"

(continued...)

the ALJ's decision. *See* Administrative Record at 1-2. When a reviewing court is confronted with new evidence provided to the Appeals Council, the Eighth Circuit Court of Appeals directs the reviewing court to consider the new evidence as part of the administrative record. In *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000), the Eighth Circuit explained that:

> The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the 'administrative record,' even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Nelson*, 966 F.2d at 366.

*Id.*; *see also Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."); *Nelson*, 966 F.2d at 366 ("The newly submitted evidence is to become part of what we will loosely describe as the 'administrative record,' even though the evidence was not originally included in the ALJ's record. . . . If, as here, the Appeals council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision."). In *Riley v. Shalala*, 18 F.3d 619 (8th Cir. 1994), the Eighth Circuit noted that a reviewing court:

> must speculate to some extent on how the administrative law

(continued...)

addition of new evidence regarding Kloster's back pain and new difficulties with his prosthesis, Kloster may have "significant problems" and is "probably not going to be able to be working on a consistent basis."[15]

Under such circumstances, the Court concludes that the ALJ failed to fully and fairly develop the record in this matter. *See Cox*, 495 F.3d at 618. Specifically, the ALJ failed to address medical evidence from February 2011 and March 2011 that was contrary to the January 2011 medical note showing that he was doing well. The ALJ also failed to help Kloster obtain potentially pertinent medical records from his primary care physician in late 2010 and 2011. Accordingly, the Court determines that remand is necessary. In particular, the ALJ should further develop the record and more fully discuss Kloster's medical records after January 2011, including the new evidence provided the Appeals Council after the ALJ's decision.[16] The Court further finds that because the ALJ primarily relied on medical opinions which pre-dated 2011, a period of time where Kloster was found to be disabled, the ALJ should order a new consultative examination of Kloster as to his physical impairments, including his functional abilities after December 2010. *See*

---

[14](...continued)
>  judge would have weighed the newly submitted reports if they
>  had been available for the original hearing. We consider this
>  to be a peculiar task for a reviewing court.

*Id.* at 622. The Court finds these records pertinent to determining whether the ALJ fully and fairly developed the record in this case. In particular, this evidence supports Kloster's March 2011 complaints of back pain and pain in his amputated leg.

[15] Administrative Record at 67.

[16] Because the Court determined that this case should be remanded for further consideration, the Court will not "speculate . . . on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing," *Riley*, 18 F.3d at 622; instead, the Court will allow the ALJ, on remand, to consider the new medical evidence for himself.

*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (medical examinations and tests may be ordered when the medical records presented to the ALJ constitute insufficient medical evidence to determine whether the claimant is disabled). Lastly, on remand, the ALJ must fully and fairly develop the record with regard to Kloster's medical records, including the missing records from his primary care physician in late 2010 and 2011.[17]

### 2.    *Credibility Determination*

Kloster argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Kloster maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Kloster's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical

---

[17] Since this case originated in Texas and has been pending on appeal for over two years, the Court believes that both the ALJ and Kloster's current attorney should work together in obtaining the missing records from Kloster's primary care physician in late 2010 and 2011.

evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ determined that:

> After considering the evidence of record, the undersigned finds that [Kloster's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Kloster's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning on December 23, 2010, to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> In terms of [Kloster's] alleged continuing stump complications, the notes after December 23, 2010 indicate he was doing well with his residual limb and prosthesis. It is reasonable to limit him to the residual functional capacity as found herein.

(Administrative Record at 18-19.)

In her decision, the ALJ generically sets forth the law for making a credibility determination under the Social Security Regulations.[18] The ALJ failed to apply the law, however, in determining the credibility of Kloster's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ offers no discussion of Kloster's testimony, and offers nothing in terms of the *Polaski* factors and how those factors relate to Kloster's subjective testimony and credibility. The ALJ simply states that Kloster's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning on December 23, 2010, to the extent they are inconsistent with the residual functional capacity

---

[18] *See* Administrative Record at 18.

assessment[.]"[19]   The ALJ's decision provides one reason for discounting Kloster's testimony, medical notes after December 23, 2010 indicating that Kloster was "doing well." As discussed in section *V.B.1*, the ALJ's conclusion is based on one medical note from January 2011, and does not take into consideration other medical evidence showing Kloster had difficulties one month later in February 2011. The Court finds the ALJ's reliance on the January 2011 medical note to be inadequate for supporting her credibility finding.

Because the ALJ's decision lacks any discussion of the reasons for discrediting Kloster, except that his allegations are inconsistent with the ALJ's RFC assessment, and lacks full consideration of *Polaski* or any of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Kloster's credibility. On remand, the ALJ shall set forth in detail her reasons for finding Kloster's subjective allegations to be credible or not credible. If on remand, the ALJ finds Kloster's testimony not to be credible, the ALJ shall fully explain the reasons for her credibility determination and fully explain the inconsistencies between Kloster's subjective allegations and the evidence in the record.

### C.  Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

---

[19] Administrative Record at 19.

> Where the total record is overwhelmingly in support of a
> finding of disability and the claimant has demonstrated his [or
> her] disability by medical evidence on the record as a whole,
> we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to Kloster's functional abilities and medical improvement or lack of medical improvement after December 23, 2010; and (2) make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Kloster's medical records after December 23, 2010, including missing medical records from Kloster's primary care physician in late 2010 and 2011. The ALJ should also order a new consultative examination of Kloster regarding his physical impairments, including his functional abilities. The ALJ must also consider all of the evidence relating to Kloster's subjective allegations of disability, address her reasons for crediting or discrediting those allegations, and properly apply the *Polaski* factors when determining Kloster's credibility.

## *VII.  ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this  24th  day of September, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA